United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Sebastian A. Rojas, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 16-23670-Civ-Scola |
| | ) |
| Uber Technologies, Inc. and others, | ) |
| Defendants. | ) |

**Order Denying Conditional Certification of Collective Action**

This matter is before the Court on the Plaintiff's Motion For Conditional Certification of Collective Action (ECF No. 43). For the reasons set forth in this Order, the Plaintiff's motion is **denied**.

1. **Background**

Plaintiff Sebastian Rojas seeks unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201–263 ("FLSA"). Rojas began working for Uber Technologies, Inc. ("Uber") in April 2015. (Second Am. Compl. ¶ 4, ECF No. 38.) Uber provides transportation services throughout the United States through a mobile phone application. (*Id.* ¶¶ 16-17.) Customers can use the application to hail drivers, and Uber uses the application to dispatch drivers. (*Id.* ¶¶ 2, 17.) Rojas alleges that Uber has failed to pay its drivers minimum wage for all hours worked as well as overtime premiums for work performed in excess of forty hours per week. (*Id.* ¶ 28.) Rojas also argues that Uber has misclassified its drivers as independent contractors when they are actually employees within the meaning of the FLSA. (*Id.* ¶¶ 19-20.) Rojas has moved for conditional certification of a collective action under the FLSA and seeks equitable tolling of the statute(s) of limitations from the date of the filing of the Complaint in this matter. (Mot. at 12-14.)

2. **Legal Standard**

The FLSA permits an action to be brought for unpaid minimum wages, or unpaid overtime compensation (and an additional equal amount as liquidated damages) "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). This is known as a collective action under the FLSA. The Eleventh Circuit has endorsed a two-stage procedure to determine whether it is appropriate to

maintain an FLSA case as a collective action. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008); *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1216-19 (11th Cir. 2001). At the notice stage, also known as the conditional certification stage, a district court determines whether similarly situated employees should be notified. *Morgan*, 551 F.3d at 1260-61. "The second stage is triggered by an employer's motion for decertification." *Morgan*, 551 F.3d at 1261 (citing *Anderson v. Cagle's*, 488 F.3d 945, 953 (11th Cir. 2007)).

"[B]efore facilitating notice, a district court should satisfy itself that there are other employees . . . who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Morgan*, 551 F.3d at 1269 (citing *Dybach v. State of Florida Dep't of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991); *see also Bennett v. Hayes Robertson Group, Inc.*, 880 F.Supp.2d 1270 (S.D. Fla. 2012) (King, J.) (internal quotations and citations omitted) (a court "may grant conditional certification if a plaintiff demonstrates a reasonable basis to believe that: (1) there are other employees of the Defendant who desire to opt-in and (2) that these other employees are 'similarly situated' with respect to their job requirements and with regard to their pay provisions"). The requirement that members of the collective action be similarly situated is a flexible one, and is different from that required under Federal Rules of Civil Procedure 20 (joinder), 23 (class actions), and 42 (severance). *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996); *Morgan*, 551 F.3d at 1260-61. The plaintiff "has the burden of showing a 'reasonable basis' for his claim that there are other similarly situated employees." *Morgan*, 551 F.3d at 1260 (citations omitted).

The Eleventh Circuit has described the standard at the notice stage as "fairly lenient" and "not particularly stringent." *See Morgan*, 551 F.3d at 1260-61 (internal quotations and citations omitted). Thus, the plaintiff's burden may be "'satisfied by substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary.'" *Blake v. Batmasian*, 197 F.Supp.3d 1367, 1371 (S.D. Fla. 2016) (Marra, J.) (quoting *Grayson*, 79 F.3d at 1097). The position that the plaintiff holds must be similar, but need not be identical, to the positions held by the putative class members. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001) (citations omitted); *Blake*, 197 F.Supp.3d at 1374.

### 3. Analysis

In opposing the Plaintiff's motion, the Defendants argue both that Rojas does not have standing to bring this suit and that Rojas has failed to carry his

burden of demonstrating that there are other similarly situated Uber employees who desire to opt-in. The Court will first address whether Rojas has standing, and will then address the merits of Rojas's motion for conditional certification.

### A. Standing

The Defendants argue that Rojas does not have standing to bring this suit because he filed for Chapter 7 bankruptcy on September 27, 2017. (Opp. to Pl.'s Mot. at 10, ECF No. 48.) Therefore, the Defendants argue that Rojas cannot be the named plaintiff in a collective action because this suit can only be prosecuted by the trustee of the bankruptcy estate. (*Id.*) In response, Rojas asserts that he claimed this lawsuit as exempt from the bankruptcy estate on the schedules filed with the bankruptcy court, and that the trustee has fully administered Rojas's estate and discharged him from bankruptcy. (Reply at 9, ECF No. 64.) Rojas provided the bankruptcy schedules and the discharge order as exhibits to his reply in support of his motion for conditional certification. (Reply Exs. B-D, ECF Nos. 64-2 – 64-4.)

Any property interests, including causes of action, that a debtor holds at the time he begins his bankruptcy action become a part of his bankruptcy estate. *Mobility Systems and Equipment Co. v. U.S.*, 51 Fed. Cl. 233, 236 (Fed. Cl. 2001) (citations omitted). If a cause of action is listed on a bankruptcy schedule, it is considered to be outside of the bankruptcy estate once the bankruptcy case is closed. *Id.* (citations omitted). Therefore, since the Plaintiff disclosed this lawsuit on a bankruptcy schedule and the bankruptcy has been discharged, the Plaintiff has standing to bring this suit.

### B. Conditional Certification

Rojas seeks to create an opt-in class defined as follows:

> Every person who drove for Uber as UberX, Uber Black or Uber SUV drivers within the United States in the applicable statute(s) of limitations and through the entry of judgment in this case (the "Collective Action Period"), and meets all of the following requirements: (a) who signed up to drive directly with Uber Tech. or a Subsidiary under their individual name, and (B) are/were paid by Uber Tech. and/or a Subsidiary directly and in his/her individual name, and (c) timely opted out of the arbitration provision contained in his/her applicable services agreement with Uber Tech. and/or a Subsidiary.

(Mot. at 2.) In support of his assertion that there are other Uber employees who desire to opt-in to this litigation, Rojas relies on the declaration of Michael Colman, an Operations Specialist at Uber, that was filed in another case in this

district. (Mot. Ex. A, ECF No. 43-1.) Colman's declaration states, in relevant part, that thousands of Uber's transportation providers have opted out of "one or more than one Arbitration Provision contained in the various agreements in place between Uber and [its subsidiary] Rasier and the transportation providers who use the Uber App." (*Id.* ¶ 13.) In addition, Rojas relies on the fact that there are two other cases pending before district courts in which the plaintiff(s) seek nationwide relief on behalf of Uber drivers who opted out of the arbitration provision contained in his or her applicable service agreement with Uber or one of its subsidiaries. (Mot. at 3.) Finally, Rojas relies on the fact that James Schultz has filed a notice of consent to join this lawsuit. (*Id.*) According to Rojas, these facts "clearly" demonstrate that there are other Uber drivers who wish to seek relief under the FLSA. (*Id.*)

Rojas's motion demonstrates a fundamental misunderstanding of the applicable standard. Rojas claims that "similarly situated employees as Plaintiff exist." (Mot. at 9.) However, Rojas must show that there are similarly situated employees *who desire to opt-in. See, e.g., Morgan*, 551 F.3d at 1269. Typically, plaintiffs make such a showing by submitting affidavits either from the named plaintiff(s) stating that they are familiar with other employees who are interested in joining the litigation, or affidavits from the employees who are interested in opting-in. *See, e.g., Bell v. Mynt Entertainment, LLC*, 223 F.R.D. 680, 683 (S.D. Fla. 2004) (Jordan, J.) (noting that the plaintiffs submitted seven affidavits, one from each of the named plaintiffs, claiming that each of the named plaintiffs was familiar with other employees of the defendant that were interested in joining the litigation); *Bedoya v. Aventura Limousine & Transp. Serv., Inc.*, No. 11-24432, 2012 WL 1933553, at *4 (S.D. Fla. April 10, 2012) (Altonaga, J.) (noting that the plaintiffs submitted eight affidavits from the defendants' other employees). Here, however, Rojas has not submitted a single affidavit from another Uber driver who desires to opt-in, and although Rojas himself has submitted a declaration, he does not state that he is aware of other Uber drivers who desire to opt-in.

Neither the fact that there are thousands of drivers who have opted out of the arbitration clauses in their agreements with Uber nor the fact that other Uber drivers have filed lawsuits under the FLSA demonstrates that there are other Uber drivers who desire to opt-in to *this litigation. See Manzi v. Hartman and Tyner, Inc.*, 2011 WL 2110279, at *2 (S.D. Fla. May 25, 2011) (Cohn, J.) ("[t]he mere fact that Defendant has been sued before does not necessarily mean that there are other potential plaintiffs who wish to join the instant suit."). To the contrary, some plaintiffs who otherwise would have opted-in to this litigation may ultimately decide to opt-in to one of the other pending lawsuits. Indeed, Rojas notes that some of the Uber drivers who have opted-out

of the arbitration provisions in their service agreements "have filed and opted-into other legal actions under the FLSA . . . ." (Mot. at 10.)

Although the standard at this stage is lenient, Rojas has failed to meet it. Rojas desires to create a nationwide class, yet the only evidence that he has provided of other Uber employees who desire to opt-in is James Schultz's notice of consent. "[F]ederal courts across the Middle and Southern Districts of Florida have routinely denied requests for conditional certification where plaintiffs attempt to certify a broad class based only on the conclusory allegations of a few employees." *Hart v. JPMorgan Chase Bank, N.A.*, No. 8:12-cv-00470-T-27TBM, 2012 WL 6196035, *4 (M.D. Fla. Dec. 12, 2012) (quoting *Simpkins v. Pulte Home Corp.*, No. 6:08-cv-130-Orl-19DAB, 2008 WL 3927275, at *2 (M.D. Fla. Aug. 21, 2008) (holding that the identification of eleven employees who may desire to join the lawsuit and the submission of declarations from three viable opt-in plaintiffs representing three of seventeen nationwide call centers was insufficient to support conditional certification of a nationwide class); *see also Powell v. Carey Intern., Inc.*, No. 05-21395, 2006 WL 4562105, *4 (S.D. Fla. Mar. 27, 2006) (Seitz, J.) (holding that one notice of consent from an employee outside of the Miami area, who did not submit an affidavit, was insufficient to support the creation of a nationwide class). The Court notes that although Rojas cites several cases in support of his argument that courts "frequently grant conditional certification with no opt in plaintiffs or only one opt in plaintiff," the cases are all from outside of the Eleventh Circuit, and none of the cases involved certification of a nationwide class. (Reply at 4.)

Rojas has also failed to demonstrate that any potential opt-in plaintiffs are similarly situated. In support of his assertion that other Uber drivers are similarly situated, Rojas relies on documents from cases pending before other district courts and has himself provided a declaration. (Mot. at 4-5, 10.) Specifically, Rojas notes that Uber argued in a case pending before the Northern District of California that it treats its drivers as independent contractors. *O'Connor v. Uber Technologies, Inc.*, 82 F.Supp.3d 1133, 1137-38 (N.D. Cal. 2015) (noting that "Uber argues the drivers are not its employees but instead are independent contractors . . . ."). Rojas also relies on Colman's deposition testimony from that same case for statements concerning Uber's policies and practices. (Mot. at 11-12.) However, Colman's testimony and the arguments that Uber made before the Northern District of California concern Uber's high-level policies and practices. In addition, the Court notes that the case before the Northern District of California solely concerns drivers who have driven for Uber in the state of California. (Mot. Ex. D at 2, ECF No. 43-4.) None of the documents that Rojas has provided from cases pending before other

district courts concern the specific job requirements and pay provisions of potential opt-in plaintiffs in this litigation.

In its opposition to Rojas's motion, Uber alleges that wholly-owned subsidiaries of Uber, some of whom are Defendants in this action, provide the lead-generation services to individual drivers. (Opp. at 4-5.) Uber alleges that during the relevant time period, Uber and its subsidiaries used 17 different agreements with drivers. (*Id.* at 5.) These agreements are not identical and have changed over time. (*Id.*) Furthermore, Uber's operations, including the pricing structure for each of Uber's products, differ among cities due to market-specific factors, and each subsidiary is managed "in an organizationally and operationally unique way. . . ." (*Id.* at 6-10.) Uber has supported its factual allegations with affidavits. (*Id.* at Exs. A-D.) The Court notes that Colman's deposition testimony supports Uber's allegations that, in many respects, the specific policies applicable to Uber's drivers vary by city. (Mot. Ex. C, at 7-10.)

In light of these allegations, Rojas's failure to support his assertions that any potential opt-in plaintiffs are similarly situated in terms of their job requirements and pay provisions is fatal to his motion. Curiously, Rojas has not even provided an affidavit from opt-in plaintiff Schultz, and the motion does not include any description of Schultz's employment with Uber. Rojas has not even alleged that Uber failed to pay Schultz minimum wage or overtime wages. Thus, the Court is left with absolutely no information to determine whether Rojas and Schultz are similarly situated, let alone whether other potential opt-in plaintiffs are similarly situated to Rojas and/or Schultz. *See, e.g., Powell*, 2006 WL 4562105, at *4 (holding that the plaintiffs had not demonstrated that other employees were similarly situated in part because the plaintiffs did not submit an affidavit from the sole employee outside of the Miami area who had filed a notice of consent).

Simply put, Rojas has made no independent effort to substantiate his allegations that there are other Uber drivers who desire to opt-in to this litigation or that such drivers are similarly situated to Rojas in terms of job requirements and pay provisions.

### 4. Conclusion

Accordingly, the Court **denies** the Plaintiff's Motion for Conditional Certification of Collective Action (**ECF No 43**).

**Done and ordered** in chambers, at Miami, Florida, on June 27, 2017.

_____
Robert N. Scola, Jr.
United States District Judge